```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

Demianna Natarelli

    v.                                    Case No. 23-cv-542-SM-AJ

Martin O'Malley, Commissioner,
Social Security Administration

## Report and Recommendation

Demianna Natarelli moves, pursuant to 42 U.S.C. § 405(g), to reverse the Commissioner's decision denying her applications for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI of the Social Security Act. In support, she contends that the Administrative Law Judge ("ALJ") erred in his evaluation of the medical opinion evidence, which resulted in an erroneous finding that she was able to do her past work as a fast-food serving manager and, for that reason, she was not disabled. The Acting Commissioner moves to affirm.

For the reasons discussed, the district judge should grant Natarelli's motion and deny the Commissioner's motion.

### Standard of Review

When reviewing the Commissioner's decision pursuant to § 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35

(1st Cir. 1999); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020).  Questions of law are reviewed de novo.  Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The ALJ's factual findings must be affirmed if they are supported by substantial evidence. Biestek v. Berryhill, --- U.S. ---, 139 S. Ct. 1148, 1153 (2019). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1154 (cleaned up). The court must affirm the ALJ's findings, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); accord Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

## Background

A.  Physical Impairment

Natarelli was treated for back pain and other physical symptoms, beginning in 2021 at Appledore Medical Group following an onset of pain in January of 2021. Despite Natarelli's complaints of pain and weakness, the diagnostic testing showed mostly normal results and, at most, mild degenerative changes. An MRI done in September of 2021 showed a small annular disc tear and mild disc bulge with no canal narrowing or neural

impingement. Physicians recommended physiatry and physical therapy.

B. Mental Health Treatment

Natarelli received treatment for mental health issues beginning in 2019. Melissa French, APRN PMHNP, provided mental health care and managed Natarelli's medications.[1] By October of 2021, Natarelli had been diagnosed with post-traumatic stress disorder, generalized anxiety disorder, and major depressive disorder. She was later diagnosed with panic disorder.

C. Procedural Background

On August 31, 2021, Natarelli filed applications for benefits under Title II and Title XVI, alleging disability since January 27, 2021. She was 22 years old when she applied. Natarelli has worked as a waitress and a personal care assistant, and she owns and operates a photography studio.

As part of the state administrative proceedings, Robert Su Prescott, PhD, conducted a consultative mental examination on February 18, 2022. In evaluating Natarelli's level of mental functioning at that time, Dr. Prescott found that Natarelli could understand and remember basic work-like instructions, make adequate judgments for work-related decisions, and control her

---

[1] APRN stands for "Advanced Practice Registered Nurse" and PMHNP stands for "Psychiatric Mental Health Nurse Practitioner." See www.registerednursing.org/aprn, www.aanpcert.org/certs/pmhnp.

3

behavior while working as long as she was in lower stress work environments. He also found, however, that for interaction with others Natarelli would have distress if working with too many people and for concentration, persistence, and pace, she could focus for short to moderate periods but not for extended periods. As part of the administrative findings, state agency psychologist, Russel Phillips, PhD., completed a Psychiatric Review Technique, assessing Natarelli's mental residual functional capacity based on a review of her records. Dr. Phillips found that Natarelli was moderately limited in several functional areas, including the abilities to maintain attention and concentration for extended periods, to maintain regular attendance, to interact with the public, and to respond appropriately to changes in the work setting.

    D.   <u>Hearing and Decision</u>

The ALJ held a hearing on Natarelli's applications on May 15, 2023, by "online video." AR at 17. Natarelli participated in the hearing and was represented by counsel. A vocational expert also participated in the hearing. The ALJ asked the vocational expert for her opinion on jobs a person could do with hypothetical physical limitations but no mental limitations, and the vocational expert responded that the person could do Natarelli's previous work as a fast-food manager and as a sales clerk. The vocational expert also testified that there were

4

other jobs that person could do. When the ALJ added mental limitations that the claimant could do "simple and detailed tasks," could sustain concentration for periods of two hours, and tolerate occasional contact with the general public, the vocational expert ruled out Natarelli's previous work but said that the person could do the other jobs she identified, such as a mail clerk, a house cleaner, and an assembler.

The ALJ issued the decision a few weeks later. He found that Natarelli had severe impairments due to degenerative disc disease in the cervical and lumbar spine and obesity. The ALJ did not find any severe mental impairments. He found that Natarelli was able to do her past work as a fast-food manager, and for that reason, was not disabled. Natarelli sought review by the Appeals Council, which was denied, making the ALJ's decision the Commissioner's final decision.

## Discussion

Natarelli contends that the ALJ did not properly address the medical opinion evidence in the record. With respect to opinions pertaining to her mental limitations, Natarelli contends that the ALJ erred in not finding depressive disorder and panic disorder as severe impairments and contends that substantial evidence is lacking to support the ALJ's finding that she could do her past work. The Commissioner argues, to the contrary, that the ALJ properly assessed the medical opinions,

5

correctly found that Natarelli's anxiety was not a severe impairment, and properly found based on substantial evidence that she was not disabled. Because the court concludes that the ALJ erred in his evaluation of the medical opinion evidence of mental functioning, it is not necessary to address other issues that Natarelli raises in support of her motion to reverse and remand.

### A. Burdens of Proof

To be eligible for benefits under Title II and Title XVI of the Social Security Act, a claimant must show that she is disabled, meaning that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). "An ALJ employs a five-step test to determine if an individual is disabled within the meaning of the Social Security Act" that asks "questions that are sequential and iterative, such that the answer at each step determines whether progression to the next is warranted."[2] Sacilowski, 959 F.3d at

---

[2] At Step One the ALJ determines whether the claimant is currently engaging in substantial gainful activity, and, if not, at Step Two, whether the claimant has a severe impairment. §§ 404.1520(a)(4)(i) & (ii). If at Step Two the ALJ finds a severe impairment, the ALJ determines at Step Three whether the impairment meets or medically equals an entry in the Listing of

6

433. The steps are provided in the Social Security regulations, 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. 416.920(a)(4).[3]

B. Step Two Findings

At Step Two, the ALJ must determine whether a claimant possesses a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Step Two is a "de minimis screening device" for "groundless claims" and for "applicants whose impairments are so minimal that, as a matter of common sense, they are clearly not

---

Impairments, which results in a finding of disability if a Listing is met. § 404.1520(a)(4)(iii). If the impairment does not meet or medically equal a listed impairment, between Step Three and Step Four, the ALJ assesses the claimant's residual functional capacity to determine whether she has the capacity to work despite her limitations.  20 C.F.R. §§ 404.1520(a)(4) & 404.1545(a).

At Step Four, the ALJ determines whether the claimant's residual functional capacity is sufficient to allow her to perform any of her past relevant work.  § 404.1520(a)(iv).If not, at Step Five, the ALJ determines whether, in light of the claimant's residual functional capacity, age, education, and work experience, she can make an adjustment to other work available in the national economy. § 404.1520(a)(4)(v)).  The claimant bears the burden of showing she is disabled through the first four steps, but at Step 5 the Commissioner must provide evidence to show that there are jobs in the national economy that the claimant can do. Sacilowski, 959 F.3d at 434.

[3]20 C.F.R. Part 404 applies to claims for disability insurance benefits, while 20 C.F.R. Part 416 applies to claims for supplemental security income, but the regulations provide the same five-step analytical framework and are otherwise the same for purposes of the issues in this case. See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989). For that reason, the court will refer to Part 404 in the citations to the regulations.

disabled." McDonald v. Sec'y of Health and Human Servs., 795 F.2d 1118, 1122–23 (1st Cir. 1986). If the ALJ finds at least one severe impairment at Step Two, which necessarily causes the analysis to continue, any error is harmless as long as the ALJ considers the limitations caused by all impairments, regardless of their severity, in assessing the residual functional capacity. Liam S. v. O'Malley, No. CV 23-00194-WES, 2024 WL 260816, at *7 (D.R.I. Jan. 24, 2024); Conrad v. Kijakazi, 666 F. Supp. 3d 161, 172 (D. Mass. 2023).

For that reason, even if the ALJ in this case missed severe impairments at Step Two, that error would be harmless, as long as the ALJ properly assessed Natarelli's residual functional capacity in light of all of her limitations, physical and mental.

C. Residual Functional Capacity

The ALJ assessed Natarelli to have the residual functional capacity to do light work with certain climbing and postural limitations but without any limitations due to mental health impairment. The ALJ did not expressly consider the diagnosed mental health impairments of anxiety, panic disorder, or depression, and instead referred generally to the analysis of severity at Step Two.[4] Natarelli contends that the Step Two

---

[4] In fact, the ALJ identified only anxiety as a mental health limitation, despite the other diagnoses in the record.

8

analysis was erroneous because the ALJ rejected the medical opinions about her mental health limitations and impermissibly substituted his own opinion.

Because a residual functional capacity is an administrative assessment rather than a medical finding, the ALJ may "piece together the relevant medical facts from the findings and opinions of multiple physicians." Evangelista v. Sec'y of Health & Hum. Servs., 826 F.2d 136, 144 (1st Cir. 1987); accord Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (July 2, 1996); Purdy v. Berryhill, 887 F.3d 7, 14 (1st Cir. 2018). An ALJ, as a lay person, however, is not qualified to interpret functional capacity from raw medical data or substitute his own opinion for the opinion of a medical source, although he may make findings about functional capacity based on common sense in circumstances within a lay-person's competence. Kimball v. Kijakazi, Case No. 21-cv-943-LM, 2022 WL 270819, at *8 (D.N.H. July 7, 2022); Curtis v. Kijakazi, 2022 DNH 041, 2022 WL 994500, at *5 (D.N.H. Mar. 29, 2022).

The record includes medical opinion evidence about Natarelli's functional limitations due to mental health impairments from her treating provider, Nurse French; an examining state agency consultant, Dr. Prescott; and a state

agency consultant who did not examine Natarelli, Dr. Phillips.[5] The ALJ stated that there were no mental status examinations in the record, which the Commissioner acknowledges was wrong. Doc. no. 7-1, at 5 n.2. Nurse French provided mental status results as part of her treatment notes, and Dr. Prescott provided mental status examination results in the Comprehensive Psychological Profile.

Nurse French also completed a "Mental Residual Functional Capacity Assessment." Dr. Prescott examined Natarelli for purposes of completing the "Comprehensive Psychological Profile," and Dr. Phillips provided a "Psychiatric Review Technique" as part of the state agency determination. In those opinions, Nurse French and Dr. Phillips found moderate limitations in Natarelli's ability to sustain concentration and complete a workday and work week, in her ability to interact with the general public, and her ability to respond to changes in the work setting. Similarly, Dr. Prescott found that Natarelli would experience distress if she were around too many

---

[5] Another state agency consultant, Dr. Landerman, reviewed Natarelli's records for purposes of reconsideration. AR at 92-93. Dr. Landerman found that although there was medical evidence of depression and anxiety, the record was insufficient to assess Natarelli's limitations. Id. On remand, it may be appropriate to request an opinion from an impartial psychological expert to augment the record. See Diane K. v. Kijakazi, 2023 WL 8713695, at *6 (D.R.I. Dec. 18, 2023).

people and that she could not sustain focus and attention for extended periods.

Despite the consistency of the medical opinions in the record as to Natarelli's moderate limitations due to mental impairments, the ALJ found, to the contrary, that Natarelli had only mild limitations in each area of mental functioning.[6] In support, the ALJ cited Natarelli's ability to prepare simple meals, clean, help with her girlfriend's daughter, interact socially, and work to set up a website for her photography business and her statements on her function report that she could follow instructions, get along with authority figures, and handle changes in routine for the most part.[7]

As such, the ALJ formulated his own opinion of Natarelli's functional abilities in place of the functional assessments in the medical opinions. The ALJ did not need a single medical opinion to support his functional capacity assessment, and he

---

[6] Although the opinions also included findings that Natarelli's mental health limitations were severe, within the meaning of Step Two, that finding is not relevant for purposes of the ALJ's determination. 20 U.S.C. § 404.1520b(c).

[7] In the motion to affirm, the Commissioner cites other evidence in the record to support the ALJ's evaluation. The court, however, reviews the ALJ's analysis based on the grounds cited by the ALJ and not based on "the Commissioner's subsequent ad-hoc justification in its papers." Dunsford v. Commissioner of Social Security, 2023 WL 2242083, at *7 (N.D.N.Y. Feb. 27, 2023); see also Libin v. Berryhill, 2018 DNH 129, 2018 WL 3085206, at *2 (D.N.H. June 22, 2018).

could have relied on parts of different opinions if those existed. But here, the ALJ lacked supporting medical opinions and findings for Natarelli's mental limitations in functional capacity, and he simply substituted his own opinion for the record opinions. Therefore, the ALJ's mental residual functional capacity assessment is flawed by the erroneous evaluation of the medical opinions and does not provide substantial evidence to support the ALJ's finding that Natarelli was not disabled.

## Conclusion

For the foregoing reasons, the district judge should grant the plaintiff's motion to reverse and remand (doc. no. 6) and deny the Commissioner's motion to affirm (doc. no. 7). The case should be remanded for further administrative proceedings pursuant to Sentence Four of § 405(g).

Any objections to this Report and Recommendation must be filed within **fourteen days** of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion.  Only those issues raised in the objection to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Natl Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id.  Failure to file any objections within the specified time waives the right to

appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

April 22, 2024

cc:  Christopher Roundy, Esq.
     Candace H. Lawrence, Esq.

13